UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

HEATHER NICOLE DURHAM, on behalf
of herself and others similarly situated,

*Plaintiff,*

v.

CITY OF CHARLOTTE, a North Carolina
municipal corporation,

*Defendant.*

## CLASS ACTION COMPLAINT
## (JURY TRIAL DEMANDED)

NOW COMES Plaintiff, Heather Nicole Durham, on behalf of herself and others similarly situated, and alleges and says:

## SUMMARY OF THE ACTION

The Driver's Privacy Protection Act, 18 U.S.C. §§ 2721-25 ("DPPA") prohibits, *inter alia*, disclosure of personal information from motor vehicle records for purposes not specifically permitted by the DPPA. Marketing is not a permitted purpose.

From at least 2007 through late 2020, Defendant City of Charlotte (the City) has systematically disclosed the names, addresses, and drivers' license numbers of thousands of drivers, including Plaintiff's, by making paper copies of DMV-349 motor vehicle accident reports containing that information publicly available in the City's offices at its records desk. The City made

1

these reports available to persons it knew were acquiring the information for marketing purposes. The City was asked to stop this practice in 2016, but it continued violating the DPPA until late 2020.

Plaintiff, for herself and others similarly situated, seeks liquidated damages and injunctive relief on behalf of a class of individuals who can prove (a) that their information was disclosed for marketing purposes by the City; and (b) that at least one marketer sent Plaintiff a solicitation mailing as a result of the City's unlawful disclosure of Plaintiff's DPPA-protected name and address. information.

## **PARTIES**

1.    Plaintiff Heather Nicole Durham is a citizen and resident of Mecklenburg County, North Carolina, and was a resident of Mecklenburg County at the time of her motor vehicle accident described below.

2.    Defendant City of Charlotte ("Defendant") is a North Carolina municipal corporation, chartered by the General Assembly of North Carolina, organized and operating under the laws of North Carolina, located in Mecklenburg County, North Carolina.

3.    Defendant has, as one of its component parts, the Charlotte-Mecklenburg Police Department (CMPD).

4.    The CMPD is not capable of being sued because it is a component part of Defendant; however, Defendant is the proper entity to sue for any actionable DPPA violations committed by Defendant through its component, the CMPD.

5.    CMPD police officers are employed and paid by Defendant.

6.    CMPD police officers are employees and agents of Defendant.

2

7.     Neither CMPD nor the City of Charlotte is a state agency under either state or federal law. As the City has testified:

    a.    The Charlotte City Council in conjunction with the Charlotte City Manager, not the State of North Carolina, hires the CMPD Chief.

    b.    The CMPD Chief sets CMPD policy.

    c.    Other than setting statewide standards for all law enforcement officers, the State of North Carolina exercises no control over CMPD.

    d.    The State of North Carolina does not spend the City's money.

    e.    The State of North Carolina neither hires nor fires CMPD officers.

8.     Defendant is a "person" as that term is defined in 18 U.S.C. 2725(2) and as that term is used in 18 U.S.C. 2724(a).

## JURISDICTION AND VENUE

9.     This action arises under, and is brought pursuant to, the DPPA. Subject matter jurisdiction is conferred upon this Court by 18 U.S.C. § 2724(a) and 28 U.S.C. § 1331 as the action arises under the laws of the United States.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as Defendant is subject to personal jurisdiction in this District and therefore is deemed to reside in this District for purposes of venue. 28 U.S.C. § 1391(b) and (c).

## FACTS

### Drivers' Licenses, Vehicle Registrations, and Department of Motor Vehicles

11.     The North Carolina Division of Motor Vehicles (NCDMV) is a "State department of motor vehicles" as that term is used in the DPPA.

12.     As used herein, the term "driver's license" refers to a permit to operate a motor vehicle issued by a State department of motor vehicles.

13.     North Carolina law, including N.C. Gen. Stat. § 20-7, requires any applicant for a North Carolina driver's license to give her full name, date of birth, sex, mailing address, and residence address to the NCDMV. The NCDMV obtains this information in connection with motor vehicle records including drivers' licenses.

14.     The NCDMV assigns each licensed driver a license number.

15.     A North Carolina driver's license number originates with NCDMV.

16.     No person or entity other than NCDMV has any input into what license number will be assigned to a North Carolina licensed driver.

17.     The NCDMV enters each driver's name, date of birth, address(es) and license number into its license database.

18.     The NCDMV retrieves each driver's name, date of birth, address, and license number from its license database and prints that information onto each driver's license it issues. The NCDMV then sends the license to the driver.

19.     A driver's license is a "motor vehicle record" as defined by 18 U.S.C. § 2725.

20.     Plaintiff's driver's license was issued by NCDMV.

4

## The DMV-349 Accident Report

21.     Under N.C. Gen. Stat. § 20-4.01(33b), a reportable crash is one involving a motor vehicle that results in one or more of the following:

> a.     Death or injury of a human being.

> b.     Total property damage of one thousand dollars ($1,000) or more, or property damage of any amount to a vehicle seized pursuant to N.C. Gen. Stat. § 20-28.3.

22.     The accident in which Plaintiff was involved and which is described below was  a reportable crash under G.S. 20-4.01(33b).

23.     Under N.C. Gen. Stat. § 20-166.1(a) the driver of a vehicle involved in a reportable accident must notify the appropriate law enforcement agency of the accident.

24.     Under N.C. Gen. Stat. § 20-166 the driver of a vehicle involved in a reportable crash must, if it is safe to do so, remain at the scene of the crash until a law-enforcement officer completes the investigation of the crash or authorizes the driver to leave.

25.     Under N.C. Gen. Stat. § 20-166.1(e), law enforcement agencies in North Carolina, including the CMPD, are obligated to investigate reportable accidents which are reported to them, such as Plaintiff's accident described below.

26.     North Carolina law, in particular N.C. Gen. Stat. § 20-29, requires any driver who is involved in a motor vehicle accident in North Carolina to produce her driver's license on request of a law enforcement officer. A driver's failure to do so is a crime. *Id.*

27.     Law enforcement officers in North Carolina, including CMPD officers employed by Defendant, are required by law to use a standard form

promulgated by NCDMV, known as a DMV-349, to record their investigations of reportable crashes, including Plaintiff's accident described below.

28.    When law enforcement officers complete the DMV-349 in connection with an accident investigation, they are obligated to comply with the then-current edition of the Instruction Manual for the DMV-349 (the Manual).

29.    Every sworn law enforcement officer in North Carolina, including all CMPD officers, must complete training on completing the DMV-349 consistent with the Manual.

30.    At all relevant times, the Manual instructed and instructs law enforcement officers to record on the DMV-349 the names of drivers involved in an accident as follows: "Enter the driver's name **exactly as it appears on his/her driver's license.**" (Emphasis added).

31.    At all relevant times, including the time of each DPPA violation referred to below, CMPD has trained its recruits on completing DMV-349s as required by the Manual.

32.    At all relevant times, CMPD officers have completed DMV-349s as required by the Manual.

33.    At the time of each DPPA violation referred to below, Defendant was under a duty to know, and did know, the contents of the Manual; and, Defendant's component part, the CMPD and its police officers, were required by law and by Defendant to comply, and did comply, with the above-described instructions contained in the Manual.

34.    CMPD officers use a computer program called ReportBeam to complete DMV-349s for accidents they investigate.

35.    When CMPD officers complete DMV-349 forms, they routinely access either the drivers' licenses or the NCDMV database which contains the

drivers' personal information found on the drivers' licenses. Such officers obtain drivers' personal information from these sources, including drivers' names, addresses and driver's license numbers.

36.    For the vast majority of accidents, CMPD officers use ReportBeam to retrieve each driver's personal information, including the driver's name, address, date of birth, and driver's license number, from the NCDMV driver's license database and then auto-populate that information into DMV-349 accident reports. When the driver's information is auto-populated, it is thus taken directly from a NCDMV database and placed on the DMV-349 form.

37.    When, and only when, the officer has auto-populated the driver's information onto the DMV-349, the ReportBeam software inserts a "dataclip" into the ReportBeam database in association with that particular report. Accordingly, whenever a "dataclip" is inserted for a given report, the drivers' information was auto-populated, i.e., taken directly from the NCDMV database.

38.    When CMPD officers complete DMV-349 forms, they include the driver's license number of each involved driver on the report.

39.    When a CMPD officer retrieves a driver's name, address or driver's license number for purposes of investigating an accident or completing a DMV-349, Defendant is an "authorized recipient" of the driver's personal information under 18 U.S.C. § 2721(b)(1) and (c).

40.    The DMV-349 form contains a check box for each driver in which the law enforcement officer indicates whether the driver's address on the DMV-349 matches the address on the driver's license (the Same Address Box).

7

41.   Each CMPD officer has, at all relevant times, been trained not to check "Yes" for the Same Address Box on the DMV-349 unless he has compared the address on the DMV-349 to either the driver's physical license or to the NCDMV database.

42.   Accordingly, if the Same Address Box is checked "Yes," the CMPD officer has compared the address on the DMV-349 either to the address shown on the driver's license or to the address in the NCDMV database.

43.   Where the Same Address Box is checked "Yes," the DMV-349 reveals information from a driver's motor vehicle record, namely the driver's address on the driver's license and in the NCDMV database.

44.   Where the Same Address Box on a DMV-349 is checked "Yes," the DMV-349 pertains to driver's motor vehicle operator's permit. As a result, such a DMV-349 is a motor vehicle record as defined by 18 U.S.C. § 2725(1).

45.   CMPD officers investigate tens of thousands of accidents per year and have done so for at least a decade.

46.   The vast majority of the DMV-349 forms created by CMPD contain at least one driver's name, address, and driver's license number.

47.   The vast majority of DMV-349 forms created by CMPD have the Same Address Box checked "Yes" for at least one driver.

**<u>Defendant systematically discloses personal information from motor vehicle records to persons who lack a permissible purpose under the DPPA.</u>**

48.   At least as early as 2007 Defendant began making paper copies of completed CMPD DMV-349 forms available to the public in the CMPD records division.

49.     From at least 2007 until Defendant was sued in another case and that plaintiff sought a preliminary injunction, in late 2020 Defendant placed one or more copies of its recently created DMV-349s on the front desk of its records division such that anyone who comes into the records division can view the information on each DMV-349.

50.     Defendant has known, since at least 2011, that many individuals and entities obtain copies of CMPD DMV-349s for marketing purposes.

51.     Defendant has known that individuals and businesses review each DMV-349 for the purpose of marketing.

52.     From at least 2011 until Defendant stopped making reports available under pressure of a lawsuit in late 2020, multiple people came to Defendant's records division every business day to review each DMV-349 that is made available on the counter of the records division. On most, if not all, business days, one or more of those people reviewed each DMV-349 for marketing purposes.

53.     At no time has Defendant redacted personal information, as defined by 18 U.S.C. § 2725, from DMV-349s made publicly available at the CMPD records division.

54.     When Defendant disclosed to third parties, via its records division, the driver's personal information obtained for the purpose of investigating an accident or completing a DMV-349, Defendant redisclosed such personal information as defined by 18 U.S.C. § 2721(c).

55.     Under 18 U.S.C. § 2721(c), when Defendant redisclosed personal information from a motor vehicle record via its records division, it was required to record the identity of each person or entity to whom it redisclosed such information along with that person or entity's DPPA-permitted purpose for obtaining such information.

56.     Until Defendant stopped making DMV-349s publicly available under pressure from a lawsuit in late 2020, Defendant made no effort whatsoever to determine whether a person who acquired personal information via a publicly available DMV-349 provided at CMPD's records division had a DPPA-permitted purpose for obtaining such information.

57.     At no time prior to late 2020 did Defendant maintained any records identifying the persons or entities that have received such personal information or the permitted purpose for which such recipient will use such information as required by 18 U.S.C. § 2721(c).

58.     By making copies of DMV-349s publicly available at the counter of its records division, Defendant systematically disclosed the names, addresses, and driver's license numbers of hundreds of thousands of drivers, via the CMPD records division. Defendant disclosed those names, addresses and driver's license numbers without requiring a permissible purpose under the DPPA.

59.     Defendant knew that the DMV-349s it disclosed via the CMPD records division contained personal information from a motor vehicle record because, among other things:

> a.     At all relevant times, Defendant expressly required (and continues to require) that its police officers in the CMPD complete the DMV-349 form for motor vehicle accidents by **copying from the driver's license** onto the DMV-349 the name of each involved driver **exactly as that driver's name appears on his or her driver's license or by auto-populating the driver's name and address onto the DMV-349 from the NCDMV database;**

b. On the vast majority of those DMV-349s, the investigating CMPD officer explicitly represented in writing that at least one driver's address shown on the DMV-349 **matched the address on his or her driver's license**. That fact could only have come from a review of the information on the driver's license or from a review of the information in an NCDMV database of driver's license information;

c. The investigating CMPD officer copied or auto-populated from a NCDMV database the driver's license number into the proper field on the DMV-349. Defendant knew that each driver's license number originated with, and could only have come from, a department or division of motor vehicles;

d. The DMV-349 forms have a field for recording the restrictions shown on each driver's license. Defendant knew this field is routinely completed by its officers by copying the restriction code directly from a driver's license. Driver's license restrictions could only originate as a record of a department of motor vehicles; and

e. Defendant's agent, the investigating CMPD officer, retrieved one or more driver's personal information shown on the DMV-349 either from a driver's license or from a NCDMV database.

60. Upon information and belief, computer logs exist which show law enforcement access to NCDMV license records. Such logs identify, at minimum, the accessing officer, the date and time of the access, and the person whose record was accessed.

61.     Further, computer logs exist which can show whether a driver's personal information was auto-populated onto an accident report directly from NCDMV's records.

62.     In 2016, counsel for Plaintiff sent a letter to Defendant requesting that Defendant stop making DMV-349 reports available without requiring a DPPA-permitted purpose. A copy of the cease-and-desist letter, which was mailed to and received by Defendant, is attached hereto as Exhibit 1. In spite of this letter and the notice it gave Defendant that Defendant was violating the DPPA, Defendant continued to make copies of DMV-349 reports freely available at its records division without requiring a DPPA-permitted purpose.

63.     Though Defendant stopped making reports freely available, it has conceded that it could begin making those reports freely available at any time it so chose.

**Facts related to Plaintiff's Motor Vehicle Accident**

64.     On December 4, 2017, Ms. Durham was driving a vehicle that was involved in a motor vehicle collision (the Accident) caused by another driver. The Accident was a reportable crash as defined by N.C. Gen. Stat. § 20-4.01.

65.     The Accident occurred within the City of Charlotte, so under G.S. § 20-166.1(a), the CMPD was the law enforcement agency with jurisdiction over the scene of the Accident, and the CMPD was the appropriate agency to investigate the Accident and complete the DMV-349 accident report described below, so Defendant sent one of its police officers to investigate the Accident.

66.     At the scene of the Accident, Durham provided the responding CMPD police officer with her driver's license.

67.     On December 4, 2017, the responding CMPD officer completed a DMV-349 ("the Report") for the Accident which contained Durham's:

a.     full name, which was then Heather Nicole Mack;

b.     former address including nine-digit zip code;

c.     date of birth;

d.     driver's license number; and

e.     telephone number.

All of the above information is personal information as defined by 18 U.S.C. § 2725(3). A redacted copy of the Report is attached as Ex. 2.

68.     The CMPD officer who investigated the Accident auto-populated Durham's personal information, i.e., took the information directly from the DMV database, onto the DMV-349.

69.     The responding CMPD officer obtained all of Durham's personal information listed above  from Durham's driver's license or from the NCDMV database.

70.     In addition, the responding CMPD officer checked "Yes" in the Same Address Box on the Report, indicating that Durham's address shown on the Report was the same address shown on Durham's driver's license.

71.     Because the Report showed that Durham's address on the Report matched the address on her license the Report pertains to Durham's motor vehicle operator's permit.

72.     Because the Report shows Durham's driver's license number, the Report pertains to Durham's motor vehicle operator's permit.

73.     The Report is a motor vehicle record as defined by 18 U.S.C. § 2725(1).

13

74.     Because the Report showed that Durham's address on the Report matched the address on her license, the DMV-349 contains information "from a motor vehicle record" within the meaning of 18 U.S.C. § 2724(a).

75.     The CMPD police officer who investigated the Durham Accident caused the Report to be filed with the CMPD records division, which, in turn, filed the Report with the NCDMV.

**Defendant disclosed Plaintiff's personal information to persons who lacked a permissible purpose.**

76.     In December 2017, at some time on or after December 5, 2017, as was its usual practice, Defendant placed one or more unredacted copies of the Report, which included Plaintiff's personal information, on the front counter of its records division.

77.     Defendant made the Report available to the public in its records division.

78.     Digital Solutions of the Carolinas (DSC) is a data provider that obtains and distributes accident reports and personal information taken from accident reports to numerous entities for the purpose of marketing, including chiropractors, body shops, and personal injury attorneys.

79.     In December 2017, DSC regularly visited the CMPD Records Division in person and obtained a copy of every accident report that was made available.

80.     In December 2017, at some time on or after December 5, 2017, shortly after the Report became available at the CMPD Records Division, a representative of DSC came to the Records Division and procured a copy of the Report directly from Defendant.

14

81. Defendant did not require DSC or any entity to whom it disclosed accident reports, including the Report, to provide a DPPA-permitted purpose for obtaining those reports or information on those reports.

82. By providing DSC with a copy of the Report at its Records Division, Defendant published and disclosed Plaintiff's name, address, and driver's license number obtained from a NCDMV record to DSC for a purpose not permitted under the DPPA, namely, solicitation.

83. Defendant knew that the Report containing Plaintiff's information it disclosed via the CMPD records division contained personal information from a motor vehicle record because, among other things

      a.   At all relevant times, Defendant expressly required (and continues to require) that its police officers in the CMPD complete the DMV-349 form for motor vehicle accidents by **copying from the driver's license** onto the DMV-349 the name of each involved driver **exactly as that driver's name appears on his or her driver's license or by auto-populating the address onto the DMV-349 from the NCDMV database;**

      b.   The CMPD officer who investigated the Accident and completed the Report explicitly represented in writing, on the Report, that Plaintiff's address shown on the DMV-349 **matched the address on her driver's license**. That fact could only have come from a review of the information on Plaintiff's driver's license or from a review of the information in an NCDMV database of driver's license information;

c. The investigating CMPD officer copied Plaintiff's driver's license number into the proper field on the Report. Defendant knew that Plaintiff's driver's license number which its officer put on the Report originated with, and could only have come from, a department or division of motor vehicles;

d. The Report has a field for recording restrictions on Plaintiff's driver's license. Defendant knew this field is routinely completed by its officers by copying the restriction code directly from a driver's license. Driver's license restrictions could only originate as a record of a department of motor vehicles;

e. At all relevant times, Defendant knew that its CMPD officers always copy onto DMV-349s the names and addresses of drivers from: (1) drivers' licenses; or (2) the computerized records from the NCDMV and that the CMPD officer investigating the Accident followed that procedure in completing the Report; and,

f. Defendant's agent, the investigating CMPD officer who completed the Report, retrieved Plaintiff's name, address, driver's license number, personal information from a NCDMV database and put that information on the Report.

84. In December 2017, at some time on or after December 5, 2017, DSC provided the Report, which it had obtained directly from Defendant's Records Division, to James S. Farrin, P.C., d/b/a The Law Offices of James Scott Farrin (hereinafter "Farrin").

85.     In December 2017, at some time on or after December 5, 2017, Farrin obtained from DSC a copy of the Report which DSC, in turn, had obtained directly from Defendant's Records Division.

86.     Farrin then reviewed each accident report provided by DSC, including the Report.

87.     Farrin then harvested from the CMPD accident reports provided by DSC, including from the Report, the personal information of persons to whom Farrin wished to send direct-mail marketing materials. Farrin placed the harvested information, including Plaintiff's name and address, into Excel spreadsheets ("the Farrin Spreadsheets").

88.     Farrin then used the harvested personal information, including Plaintiff's name and address, to send direct-mail marketing materials to each person listed on the Farrin Spreadsheets, including Plaintiff.

89.     Plaintiff Durham recalls receiving direct-mail marketing materials following her accident, but she did not retain those materials.

**Defendant's prior knowledge of clearly established DPPA rights**

90.     Since at least 2007, Defendant has its own legal department.

91.     Defendant's legal department employs at least 5 attorneys, all of whom are licensed to practice law in North Carolina.

92.     In 2016, Defendant's City Attorney was Defendant's highest-paid employee.

93.     Collectively, the attorneys in Defendant's legal department received compensation of more than $750,000 in 2016.

94.     If Defendant needs additional legal assistance, it has the ability to hire outside counsel.

95.     The DPPA has been in effect since 1994.

96. Defendant has been aware of the DPPA since at least November 1, 2012.

97. Defendant has been aware of the DPPA for more than 20 years.

98. Since 1994, more than 100 reported judicial decisions have interpreted the DPPA.

99. The Supreme Court of the United States has issued at least two opinions involving the DPPA: *Reno v. Condon*, 528 U.S. 141, (2000) and *Maracich v. Spears*, 133 S. Ct. 2191 (2013).

100. In *Maracich*, the Supreme Court held that "sending communications for the predominant purpose of solicitation is not a use of personal information exempt from DPPA liability under (b)(4)."

101. On August 31, 2016, which was more than four years before this lawsuit was filed, Defendant received a letter asking Defendant to immediately cease and desist from the indiscriminate disclosure of accident reports containing individuals' personal information protected by the DPPA.

102. After August 31, 2016, Defendant continued to disclose accident reports containing DPPA-protected information at its Records Division; those reports contained the names, addresses, and driver's license number of drivers.

103. Because Defendant is a municipality, it is not entitled to qualified immunity. *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306–07 (4th Cir. 2006), *citing Kentucky v. Graham,* 473 U.S. 159, 166-67.

104. Defendant has known, since at least 2011, that attorneys (or their employees, agents, or vendors) obtain accident reports directly from the CMPD records division for the primary purpose of marketing to drivers who have been involved in motor vehicle accidents.

105. Defendant has known, since at least 2011, that chiropractors (or their employees, agents, or vendors) obtain accident reports directly from the CMPD records division for the primary purpose of marketing to drivers who have been involved in motor vehicle accidents.

106. Defendant has known, since at least 2011, that auto body repair shops (or their employees, agents, or vendors) obtain accident reports directly from the CMPD records division for the primary purpose of marketing to drivers who have been involved in motor vehicle accidents.

107. Defendant's disclosure of Plaintiff's name and address from NCDMV records violates the clearly established statutory rights of Plaintiff under the DPPA which, at all relevant times, a reasonable person would have known and which Defendant has, in fact, known.

## CLASS ACTION ALLEGATIONS

108. Plaintiff brings this Action on behalf of a Class which is comprised of the following individuals:

    a. Each natural person who is not an Excluded Person as defined below; and,

    b. who is listed as a North Carolina-licensed driver on a DMV-349 completed by a CMPD officer within the Class Period; and,

    c. whose name appears on a Farrin Spreadsheet; and

    d. who meets either of the following criteria:

        i. the person's North Carolina driver's license number is shown on the DMV-349; or,

        ii. the Same Address Box for the person is checked "Yes" on the DMV-349.

109.    Plaintiff also bring this Action on behalf of a Subclass consisting of all members of the Class whose information was auto-populated onto a DMV-349.

110.    The following persons are Excluded Persons:

      a.     All counsel of record;

      b.     All employees of counsel of record;

      c.     All employees of the Court; and,

      d.     All employees or officials of Defendant.

111.    The Class Period is from four years prior to the filing of this action through June 30, 2018.

112.    **Numerosity** (Fed. R. Civ. P. 23(a)(1)): The members of the Class are so numerous that joinder of all is impractical. Defendant has knowingly and impermissibly disclosed the protected personal information from motor vehicle records of approximately 6,000 individuals (who meet the Class definition) by the indiscriminate disclosure of DMV-349 reports which were disclosed on-site at CMPD's records division. The Class members' names and addresses are identifiable through review of the Farrin Spreadsheets and the accident reports.

113.    **Existence and Predominance of Common Questions of Law and Fact** (Fed. R. Civ. P. 23(a)(2)): Common questions of law and fact exist as to all members of the Class and predominate over the questions affecting only individual members. The common legal and factual questions include:

      a.     Whether a DMV-349 in which the Same Address Box is checked "Yes" is a motor vehicle record;

      b.     Whether a DMV-349 which openly displays a driver's license number is a motor vehicle record;

c.      Whether Defendant, by providing unredacted accident reports at its Records Division, knowingly disclosed protected personal information from a motor vehicle record;

d.      Whether Defendant, by disclosing an unredacted version of each Class member's DMV-349 knowingly disclosed information from a motor vehicle record for a purpose not permitted under the DPPA;

e.      Whether Defendant, because of its failure to comply with 18 U.S.C. § 2721(c) is estopped to deny, or is otherwise precluded from contesting, Plaintiff's contention that each Class member's information was obtained without a permissible purpose; and,

f.      Whether Defendant is estopped to deny, or is otherwise precluded from contesting, an individual Class member's claim that at least one item of his personal information on his DMV-349 came from his motor vehicle record.

114. **Typicality** (Fed. R. Civ. P. 23(a)(3)): Plaintiff's claims are typical of the claim of each Class member. Plaintiff has the same claims for liquidated damages and injunctive relief that she seeks for absent class members.

115. **Adequacy** (Fed. R. Civ. P. 23(a)(4)): Plaintiff is an adequate representative of the Class. Her interests are aligned with, and are not antagonistic to, the interests of the Class members she seeks to represent; she has retained counsel competent and experienced in complex litigation, particularly the DPPA. Plaintiff intends to prosecute this action vigorously. Plaintiff and her Counsel will fairly and adequately protect the interests of the members of the Class.

116. **Predominance and Superiority** (Fed. R. Civ. P. 23(b)(3)): Questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The liquidated damages sought by each member are the same. However, the liquidated damages of each member of the Class are limited, such that individual prosecution would prove burdensome and expensive. It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the Class members themselves could afford such individual litigation, it would be an unnecessary burden on the courts to require Class members to file thousands of individual lawsuits. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## COUNT I
## (LIQUIDATED DAMAGES FOR VIOLATION OF SECTION 2724(A) OF THE DPPA)

117. The allegations contained in the paragraphs above are incorporated herein by reference.

118. When each CMPD officer completed a Report for the Accident and a Class Member's accident, he obtained that Plaintiff's or Class Member's personal information, in the form of his or her address and driver's license number from a motor vehicle record.

22

119.  When each CMPD officer completed a Report for the Accident and a Subclass Member's accident, he obtained that Plaintiff's personal information, in the form of his or her address and driver's license number directly from a Department of Motor Vehicles.

120.  Defendant is a "person" as that term is defined by 18 U.S.C. § 2725(b).

121.  Defendant knowingly disclosed Plaintiff's protected personal information from a motor vehicle record at its record division as described above.

122.  Neither Plaintiff nor any Class Member has given consent to the State of North Carolina to allow any person to disclose their personal information obtained from a motor vehicle record for marketing purposes. In fact, North Carolina has no mechanism for providing consent to use personal information for marketing purposes, so it is impossible for Plaintiff or any class member to have given such consent.

123.  When Defendant knowingly disclosed Plaintiff's and each Class Member's protected personal information, from a motor vehicle record, Defendant lacked  the express consent of the person to whom the information pertained.

124.  Defendant knowingly disclosed Plaintiff's and each Class Member's protected personal information, especially her name address, phone number, date of birth, and driver's license number, from a motor vehicle record directly to DSC. DSC obtained said information for the purpose of providing it to entities, including Farrin, who intended to use that information for marketing.

125.  Farrin received the Report and each Class Member's report from DSC.

126.    Farrin obtained Plaintiff's and the Class Members' names and addresses from accident reports and then placed those names and addresses on the Farrin Spreadsheets for the purpose of sending Plaintiff direct mail advertising.

127.    Farrin then used Plaintiff's and the Class Members' name and address from the Farrin Spreadsheets to send Plaintiff and the Class Members direct mail advertising using their personal information obtained from CMPD's records division.

128.    Defendant knowingly disclosed Plaintiff's and the Class Members' personal information, including their names, addresses, phone numbers, dates of birth, and driver's license numbers from a motor vehicle record for the improper purpose of solicitation, including the solicitation of legal business by personal injury attorneys.

129.    Solicitation in general, and in particular lawyers' solicitation seeking new clients, is not a permissible purpose for disclosing personal information from motor vehicle records under the DPPA. *Maracich v. Spears*, 133 S. Ct. 2191 (2013).

130.    Because Defendant regularly and knowingly disclosed, and could resume disclosing at any time, DPPA-protected personal information from motor vehicle records for purposes of solicitation, even after receiving a cease-and-desist letter asking it to stop, Defendant's systematic violations of the DPPA are likely to continue.

131.    As a proximate result of Defendant's conduct, Plaintiff and the Class Members received solicitations by mail for, among other things, legal services in connection with their accidents. Each such solicitation contained a prominent legend noting, "This is an advertisement for legal services," or words to similar effect, as required by the North Carolina State Bar.

24

132.    As a proximate result of Defendant's disclosure of Plaintiff's and the Class Members' personal information from motor vehicle records, Plaintiff and the Class Members have been harmed, by, among other things:

  a.    Suffering the statutory harm of having their personal information disclosed;

  b.    Receiving unwanted marketing solicitations and having to deal with these solicitations;

  c.    Having their personal information disclosed to lawyers, body shops, and chiropractors in connection with their accidents;

  d.    Having their personal information disclosed to mail carriers and others in connection with a potential need for legal services; and,

  e.    Being exposed to an increased risk of identity theft, particularly due to the disclosure of their driver's license numbers and being concerned about said increased risk.

133.    Plaintiff and each Class Member is entitled to an award of $2,500 for each person to whom Defendant disclosed their personal information.

## COUNT II
## (DECLARATORY AND INJUNCTIVE RELIEF FOR VIOLATION OF SECTION 2724(A) OF THE DPPA)

134.    The allegations contained in the paragraphs above are incorporated herein by reference.

135.    Under 18 U.S.C. § 2724(b)(4), the Court should declare that Defendant's practice of disclosing DMV-349s without redacting personal information from motor vehicle records violates the DPPA.

25

136. Under 18 U.S.C. § 2724(b)(4), the Court should enter a permanent injunction prohibiting Defendant from disclosing personal information from motor vehicle records for improper purposes, including the improper purpose of solicitation. Specifically, the Court should enjoin Defendant from:

a. Disclosing names and addresses sourced from DMV-349s for purposes of solicitation;

b. Disclosing DPPA-protected personal information without first identifying the person requesting the information,

c. Disclosing DPPA-protected information to a requester without first determining that the requester seeks the information primarily for a purpose permitted under the DPPA, and,

d. Disclosing DPPA-protected information without keeping a proper record of all such transactions in a manner which complies with the DPPA's record-keeping requirements.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays the Court for the following relief:

1. To certify this action as a class action on behalf of the Class defined herein or as amended in subsequent motions or briefing, to appoint Plaintiff to represent the class, and to appoint the undersigned counsel as counsel for the Class;

2. In the alternative to paragraph 1 immediately above, to certify this action as a class action on behalf of the Subclass defined herein or as amended in subsequent motions or briefing, to appoint Plaintiff to represent

the Subclass, and to appoint the undersigned counsel as counsel for the Subclass;

3.     To declare unlawful, in violation of the DPPA, Defendant's practice of disclosing unredacted DMV-349s through its records division without requiring each person obtaining an unredacted DMV-349 to certify in writing that he is obtaining each such DMV-349 for a DPPA-permitted use;

4.     To enter a permanent injunction:

    a.     Prohibiting Defendant from disclosing unredacted DMV-349s through its records division without requiring each person obtaining an unredacted DMV-349 to certify in writing that he is obtaining each such DMV-349 for a DPPA-permitted use;

    b.     Prohibiting Defendant from disclosing DMV-349s through its records division to persons without a DPPA-permitted purpose without redacting all of the following:

        i.     Each driver's name;

        ii.     Each driver's address;

        iii.     Each driver's date of birth;

        iv.     Each driver's telephone number; and,

        v.     Each driver's license number.

5.     To enter judgment against Defendant in favor of Plaintiff and each Class member in the amount of $2,500 per person;

6.     To tax the costs of this action, including reasonable attorneys' fees, against Defendant;

7.     For a trial by jury on all issues so triable; and,

8.      For such other and further relief as the Court deems just and proper.

Dated this the 30th day of November 2021.

/s/ J. David Stradley
N.C. State Bar No. 22340
stradley@whiteandstradley.com
Robert P. Holmes, IV
N.C. State Bar No. 12438
rob@whiteandstradley.com
WHITE & STRADLEY, PLLC
3105 Charles B. Root Wynd
Raleigh, North Carolina 27612
Telephone: (919) 844-0400

/s/ John F. Bloss
N.C. State Bar No. 23947
jbloss@greensborolaw.com
Frederick L. Berry
N.C. State Bar No. 9696
fberry@greensborolaw.com
HIGGINS BENJAMIN, PLLC
301 North Elm Street, Suite 800
Greensboro, North Carolina  27401
Telephone:(336) 273-1600

/s/ Andrew H. Brown
N.C. Bar No. 28450
drew@greensborolawcenter.com
James R. Faucher
N.C. Bar No. 31514
james@greensborolawcenter.com
BROWN, FAUCHER, PERALDO & BENSON, PLLC
822 N. Elm Street, Suite 200
Greensboro, North Carolina  27401
Telephone:(336) 478-6000

*Attorneys for Plaintiff*