# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:21-CV-00638-RJC-DSC

| | |
|---|---|
| **HEATHER NICOLE DURHAM, on behalf of herself and others similarly situated,** | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) <br> ) |
| **CITY OF CHARLOTTE, a North Carolina municipal corporation** | ) <br> ) |
| Defendant. | ) <br> ) |

## MEMORANDUM AND RECOMMENDATION

**THIS MATTER** is before the Court on Defendant City of Charlotte's "Motion to Dismiss" (document # 7) and the parties' briefs and exhibits.

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is ripe for disposition.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that the Motion be denied in part and granted in part as discussed below.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On December 4, 2017, Durham was involved in an automobile collision in Charlotte. She reported the collision to the Charlotte-Mecklenburg Police Department as required by N.C. Gen. Stat. § 20-4.01 (33b). Durham provided the responding officer with her driver's license. The

officer then completed a DMV-349 ("the Report"). Officers use a DMV-349 to document their investigations of reportable collisions. The Report contained Durham's full name, former address, date of birth, driver's license number, and telephone number, all of which constitutes personal information as defined by 18 U.S.C. § 2725(3). The officer obtained this information from Durham's license or the North Carolina Department of Motor Vehicles database. The officer checked "Yes" in the Same Address Box on the Report, thereby confirming the address shown on the Report matched the address on Durham's driver's license. The officer filed the Report with the CMPD records division which in turn filed it with the NCDMV.

The City made completed DMV-349 forms available to the public in the CMPD Records Division from at least 2007 through 2020. From at least 2011 through 2020, numerous individuals went to the Records Division each business day to review completed DMV-349 forms. Shortly after Durham's DMV-349 form became publicly available, a representative of Digital Solutions of the Carolinas ("DSC") went to the CMPD Records Division and obtained a copy of the Report. DSC provided a number of DMV-349 reports, including Durham's, to James S. Farrin P.C., d/b/a The Law Offices of James Scott Farrin. Using the DMV-349 reports, Farrin created a spreadsheet containing the personal information of multiple individuals ("the Farrin Spreadsheets"). Durham's personal information was included in the Farrin Spreadsheets. Thereafter she received direct mail marketing materials as a result of the City's disclosure.

### A. <u>Procedural History of Hensley v. City of Charlotte</u>

Before Durham filed this lawsuit, she sought to intervene in <u>Johnathan S. Hensley on behalf of himself and others similarly situated v. City of Charlotte</u>, No. 3:20-cv-482-KDB-DSC, a class action which raised similar claims under the Drivers' Privacy Protection Act ("DPPA"). 18 U.S.C. § 2724(a).

Hensley filed the putative class action complaint on September 1, 2020 alleging the City violated the DPPA by disclosing protected information when it made DMV-349 reports publicly available. On August 5, 2021, the Court granted Defendant's Motion for Judgment on the Pleadings and entered a final judgment. On September 2, 2021, Hensley filed an Amended Motion to Alter Judgment, Motion to Vacate Order on Motion for Judgment on the Pleadings, Clerk's Judgment and Motion to Amend. On the same day, Durham, the Plaintiff herein, filed a Motion to Intervene seeking to be added as a plaintiff and class representative in the Hensley case.

On October 21, 2021, the Court denied Hensley's Amended Motion to Alter Judgment, Motion to Vacate Order on Motion for Judgment on the Pleadings, Clerk's Judgment and Motion to Amend, along with Durham's Motion to Intervene. Hensley has appealed the Orders granting the City's Motion for Judgment on the Pleadings and denying his Amended Motion to Alter Judgment and Motion to Vacate Order on Motion for Judgment on the Pleadings to the United States Court of Appeals for the Fourth Circuit. Hensley and Durham appealed the Order denying Durham's Motion to Intervene to the Fourth Circuit.[1]

### A. Procedural History of Durham v. City of Charlotte

Durham filed suit on November 30, 2021 seeking liquidated damages and injunctive relief under the DPPA against the City, alleging it unlawfully disclosed the personal information of thousands of drivers by making DMV-349 reports publicly available in the City's offices and at its records desk. On March 8, 2022 the City filed this Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction arguing Durham lacks standing. The City also moved for dismissal under Federal Rule of Civil Procedure 12(b)(6) for failure to

---

[1] This appeal is docketed as Case Number 21-2308, U.S. Court of Appeals for the Fourth Circuit. As of 06/13/2022, the case is pending and no documents have been filed.

state a claim upon which relief can be granted arguing claim and issue preclusion. Durham filed her Response in Opposition to the City's Motion to Dismiss on April 12, 2022. The City filed its Reply to Durham's Response in Opposition to the City's Motion to Dismiss on May 3, 2022.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1) Standard

Federal district courts have limited jurisdiction. United States ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009). "They possess only that power authorized by Constitution and statute." Randall v. United States, 95 F.3d 339, 344 (4th Cir. 1996). "Thus, when a district court lacks subject matter jurisdiction over an action, the action must be dismissed." Vuyyuru, 555 F.3d at 347.

The existence of federal subject matter jurisdiction is a threshold issue. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir.1999). A challenge to the court's subject matter jurisdiction is properly considered on a motion pursuant to Fed. R. Civ. P. 12(b)(1). Clinton v. Brown, No. 3:15-cv-0048-FDW-DSC, 2015 WL 4941799 (W.D.N.C. Aug. 19, 2015).

The party asserting federal jurisdiction has the burden of proving that subject matter jurisdiction exists. See, e.g., Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999); Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991); Norfolk Southern Ry. Co. v. Energy Dev. Corp., 312 F. Supp. 2d 833, 835 (S.D.W.Va. 2004).

In determining whether subject matter jurisdiction exists for purposes of deciding a Rule 12(b)(1) motion to dismiss, the court regards allegations in the pleadings as "mere evidence on the issue," and may consider evidence outside the pleadings without converting the motion to one for summary judgment. RF&P RR. Co., 945 F.2d at 768; F.R.C.P. 12(d). "A trial court may consider

evidence by affidavit, depositions or live testimony without converting the proceeding to one for summary judgment." Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982) (citations omitted).

"[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." Wikimedia Found. v. Nat'l Sec. Agency, 857 F.3d 193, 208 (4th Cir. 2017) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992)). In a facial challenge to standing, "the defendant contends that the complaint fails to allege facts upon which standing can be based and the plaintiff is afforded the same procedural protection that exists on a motion to dismiss." Wikimedia Found., 857 F.3d at 208 (internal quotation omitted). In a factual challenge to standing, "the defendant contends that the jurisdictional allegations of the complaint are not true and a trial court may look beyond the complaint." Id.

B. Rule 12(b)(6) Standard

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark [] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'- 'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Sons of Confederate Veterans v. City of Lexington, 722 F.3d 224, 228 (4th Cir. 2013) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." Neitzke v. Williams, 490

U.S. at 328; see also Stratton v. Mecklenburg Cnty. Dept. of Soc. Servs., 521 Fed. Appx. 278, 293 (4th Cir. 2013)). The court must not "accept as true a legal conclusion couched as a factual allegation." Anand v. Ocwen Loan Servicing, LLC, 754 F.3d 195, 198 (4th Cir. 2014).

### III. DISCUSSION

A. The City's Motion to Dismiss under Rule 12(b)(1) Should be Denied as to Durham's Claim for Monetary Relief and Granted as to her Claim for Injunctive Relief

"To establish standing, a plaintiff must show: (1) an injury in fact; (2) a sufficient causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision." Wikimedia Found, 857 F.3d at 207 (citing Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157–58 (2014)). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would otherwise not have standing." Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016). But "Congress may elevate to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." Id. at 341. "Plaintiffs proceeding under a statutory cause of action can establish a cognizable injury by 'identifying a close historical or common-law analogue for their asserted injury' for which courts have 'traditionally' provided a remedy." Garey v. James S. Farrin, P.C., No. 21-1478, 2022 WL 1815109 at *2 (4th Cir. June 3, 2022) (quoting TransUnion LLC v. Ramirez, 141 S.Ct. 2190, 2204 (2021)).

Under the DPPA, "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States

district court." U.S.C. § 2724(a). Marketing and solicitation efforts are not permissible purposes for disclosing personal information from a motor vehicle record. See 18 U.S.C. § 2721(b); Maracich v. Spears, 133 S. Ct. 2191 Gaston v. LexisNexis Risk Sol., Inc., 483 F. Supp. 3d 318, 333 (W.D.N.C. 2020).

Durham alleges that the City disclosed her personal information to DSC in violation of the DPPA, and DSC provided that personal information to Farrin. Farrin subsequently placed the information in a spreadsheet consisting of only mailing targets, and Durham received solicitations from Farrin. These allegations are sufficient to establish Article III standing and the City's Motion to Dismiss Count 1 of Durham's Complaint seeking liquidated damages under the DPPA should be denied.

Durham's allegation that the City disclosed her personal information in violation of the DPPA is sufficient to establish that she suffered a concrete injury. In Garey v. Farrin, the plaintiffs alleged they "sustained actual damages by having his or her privacy invaded" when the defendants, numerous personal injury attorneys, "knowingly obtain[ed] his or her name and address from a motor vehicle record for an impermissible purpose" in violation of the DPPA. 2022 WL 1815109 at *3. The Fourth Circuit held that plaintiffs alleged a legally cognizable privacy injury. Id.; see also Maracich v. Spears, 570 U.S. 48, 57 (2013) ("[T]he DPPA establishes a regulatory scheme that restricts the States' ability to disclose a driver's personal information without the driver's consent.") (internal quotations omitted); Gaston v. LexisNexis Risk Sol., Inc., 483 F. Supp. 3d 318, 343 (W.D.N.C. 2020) ("In the DPPA, the statute specifically protects people from all disclosure of personal information from motor vehicle records, except in certain permissible instances. Thus, impermissible disclosure of a plaintiff's personal information in violation of the DPPA creates statutory harm and confers standing."). In reaching this conclusion, the court

explained that "injuries to personal privacy have long been recognized in tort law and redressable through private litigation" and "the DPPA is aimed squarely at the right of the plaintiff . . . to be let alone." Garey, 2022 WL 1815109 at *3. Similar to the plaintiffs in Garey, Durham has alleged a legally cognizable injury.

Durham's allegation that her personal information was disclosed in violation of the DPPA is fairly traceable to the City. The City argues that the injury is not fairly traceable because there is no record of who may have accessed the DMV-349 reports during the relevant time frame. But the City does not deny Durham's allegations and concedes that during the relevant time, it made North Carolina DMV-349 reports available to the public. Durham has plausibly alleged that the disclosure of her personal information in violation of the DPPA is fairly traceable to the City.

For the foregoing reasons, Durham has alleged facts sufficient to establish Article III standing and the City's Motion to Dismiss Count 1 of her Complaint seeking liquidated damages under the DPPA should be denied.

That Durham has standing to seek monetary damages does not end the inquiry because "a plaintiff must demonstrate standing separately for each form of relief sought." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 185 (2000). "A plaintiff can 'satisfy the injury-in-fact requirement for prospective relief' either by demonstrating 'a sufficiently imminent injury in fact' or by demonstrating 'an ongoing injury.'" Garey, 2022 WL 1815109 at *3 (quoting Deal v. Mercer Cnty. Bd. of Educ., 911 F.3d 183, 189 (4th Cir. 2018). In Garey, the Fourth Circuit held the plaintiffs did not have standing to seek injunctive relief because "[a] future 'obtaining' violation would only occur if a [p]laintiff is involved in a future car accident in North Carolina, if law enforcement generates another crash report, and if the [d]efendants obtain that hypothetical

report," and "that mere possibility is hardly the kind of non-speculative imminent danger than can support injunctive relief." Id. at 4.

The City's Motion to Dismiss under Rule 12(b)(1) as to Count II of Durham's Complaint seeking injunctive and declaratory relief should be granted. In her Complaint, Durham asserts the City "placed one or more copies of its recently created DMV-349s on the front desk of its record division such that anyone who comes into the records division can view the information on each DMV-349." Am. Compl. ¶49. For a future disclosure violation of the DPPA to occur, Durham would have to be involved in another automobile collision in North Carolina, law enforcement would have to generate another DMV-349 report, and the City would have to disclose her personal information contained in this hypothetical report for a purpose not permitted under the DPPA. Similar to the hypothetical scenario described in Garey, this possibility is not the kind of non-speculative imminent danger that can support injunctive relief. Accordingly, the City's Motion to Dismiss under Rule 12(b)(1) as to Durham's request for injunctive and declaratory relief should be granted.

B. The City's Motion to Dismiss Under Rule 12(b)(6) Based on Claim Preclusion Should be Denied

"The general rule is well established that once a person has had a full and fair opportunity to litigate a claim, the person is precluded, under the doctrine of *res judicata*, from relitigating it." Duckett v. Fuller, 819 F.3d 740, 744 (4th Cir. 2016). A party relying on the doctrine of *res judicata*, or claim preclusion, must satisfy three elements: "(1) that the prior judgment was final and on the merits, and rendered by a court of competent jurisdiction in accordance with the requirements of due process; (2) that the parties are identical, or in privity, in the two actions; and (3) that the claims in the second matter are based upon the same cause of action involved in the earlier

proceeding—*i.e.,* the claims arise out of the same transaction or series of transactions, or the same core of operative facts." Id. "[A] party to litigation is one by or against whom a lawsuit is brought, or one who becomes a party by intervention, substitution, or third- party practice." Smith v. Bayer Corp., 564 U.S. 299, 313 (2011).

A nonparty is not precluded from pursuing the same claims raised by a plaintiff in a previous action unless defendants "are able to demonstrate that at least one of the six exceptions to the general rule against nonparty preclusion applies." Duckett, 819 F.3d at 742 (citing Taylor v. Sturgell, 553 U.S. 880, 892–95 (2008)). In listing the exceptions to this rule, the Supreme Court in Taylor v. Sturgell explained that "nonparty preclusion may be justified based on a variety of pre-existing substantive legal relations between the person to be bound and a party to the judgment" such as "preceding and succeeding owners of property, bailee and bailor, and assignee and assignor." 553 U.S. 880, 894 (2008). This is the exception the City relies on in their privity argument. The Supreme Court did not use the term "privity" in Taylor. Additionally, a nonparty may be bound by a judgment in a "properly conducted class action" if they are "adequately represented by someone with the same interests who was a party to the suit." Id. "One who is not an original party to a lawsuit may of course become a party by intervention, substitution, or third-party practice." Karcher v. May, 484 U.S. 72, 77 (1987). But a nonnamed class member cannot be bound by a judgment in class action litigation before the class is certified or once certification is denied. Bayer Corp., 564 U.S. at 313 (2011).

Durham's claim is not barred because the rule against nonparty preclusion applies. Durham's Motion to Intervene in the Hensley lawsuit was denied and no class was certified. Therefore, Durham was not a party in Hensley and cannot be barred from raising this claim. While Durham has appealed the denial of her Motion to Intervene in the Hensley case, this does not make her a

party in that case. Durham's claim can only be precluded if one of the exceptions to nonparty claim preclusion articulated by the Supreme Court in Taylor applies.

The City argues that claim preclusion applies because Durham was in privity with the plaintiff in Hensley. While the claims may be similar, there is no legal relationship between the parties as identified by the Supreme Court in Taylor sufficient to establish nonparty claim preclusion. Durham's claim is not precluded under the exception which allows for nonparty preclusion when the nonparty was "adequately represented by someone with the same interests" such as in a "properly conducted class action" because the class was never certified. Regardless of whether the claims are "virtually identical," this exception to the rule against nonparty claim preclusion is not applicable here.

### C. The City's Motion to Dismiss under Rule 12(b)(6) Based on Issue Preclusion Should Be Denied

A party relying on collateral estoppel, or issue preclusion, must establish five elements: "(1) that the issue sought to be precluded is identical to one previously litigated; (2) that the issue was actually determined in the prior proceeding; (3) that the issue's determination was a critical and necessary part of the decision in the prior proceeding; (4) that the prior judgment is final and valid; and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum." Collins v. Pond Creek Mining Co., 468 F.3d 213, 217 (4th Cir. 2006) (quoting Sedlack v. Braswell Servs. Group, Inc., 134 F.3d 219, 224 (4th Cir. 1998).

The City's Motion to Dismiss under Rule 12(b)(6) based on issue preclusion should be denied because Durham did not have "a full and fair opportunity to litigate the issue in the previous forum." As explained above, Durham's Motion to Intervene in the Hensley case was denied and

the class was never certified. The City cannot satisfy all five elements required to establish issue preclusion and the Motion to Dismiss should be denied.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Defendant City of Charlotte's "Motion to Dismiss" (document #7) be **DENIED** in part and **GRANTED** in part.

## V. NOTICE OF APPEAL OF RIGHTS

The parties are hereby advised that pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to the parties' counsel and to the Honorable Robert J. Conrad, Jr..

**SO ORDERED AND RECOMMENDED**.

Signed: June 14, 2022

David S. Cayer
United States Magistrate Judge