UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

HEATHER NICOLE DURHAM, on behalf of
herself and others similarly situated,

$\qquad$ *Plaintiff,*

v.

CITY OF CHARLOTTE, a North Carolina
municipal corporation,

$\qquad$ *Defendant.*

3:21-CV-00638-RJC-DSC

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

Plaintiff, through undersigned counsel, respectfully submits this

memorandum in support of his motion for an Order under Fed. R. Civ. P 23(c)

that this proceeding be maintained as a class action. For the reasons

discussed below, the Court should certify the action as a class action.

## NATURE OF THE MATTER BEFORE THE COURT

The federal Driver's Privacy Protection Act, 18 U.S.C. §§ 2721, *et seq.*,

("DPPA") protects the privacy of personal information contained in motor

vehicle records. Specifically, "A person who knowingly obtains, discloses or

uses personal information, from a motor vehicle record, for a purpose not

permitted under this chapter shall be liable to the individual to whom the

information pertains, who may bring a civil action in a United States district

Exhibit 1

court." 18 U.S.C. § 2724.[1] Here, Defendant knowingly disclosed Plaintiff's and putative class members' personal information, from a DMV database and/or their driver's licenses, to the general public, including advertisers—a disclosure purpose which is prohibited by the DPPA.

Plaintiff's counsel has overcome formidable obstacles to create a process whereby class-wide proof of Defendant's DPPA violations, and the resulting harm, is feasible. The challenges surmounted by Plaintiff's counsel include:

(1) the Fourth Circuit's 2022 conclusion[2] that the DPPA imposes liability for disclosing personal information only if the defendant derived the personal information *directly* from a motor vehicle record, and

(2) this Court's 2023 ruling, in related litigation against Defendant,[3] that because Defendant has entirely failed (as the DPPA expressly requires[4])

---

[1] The DPPA defines "personal information" to include an individual's name, address, and driver identification number, 18 U.S.C. § 2725(3), and it defines a "motor vehicle record" as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles," 18 U.S.C. 2725(1).

[2] *See Garey v. Farrin*, 35 F.4th 917, 927 (4th Cir. 2022) ("[T]he DPPA imposes civil liability only on a defendant who obtains personal information *from* a motor vehicle record, but not on a defendant who merely obtains personal information that can be linked back to (*i.e.*, derived from) such a record" (emphasis in original)).

[3] *Hensley v. City of Charlotte*, 2023 U.S. Dist. LEXIS 43229 (W.D.N.C. Mar. 14, 2023).

2

to maintain records identifying the persons who received the personal information from Defendant and the purpose for which the recipients intended to use such information, that the plaintiff could not show his injury was fairly traceable to Defendant. 2023 U.S. Dist. LEXIS 43229, at *9.

As shown below, Plaintiff and her counsel have solved these problems, and as a result the action is a prototypical class action. Rule 23's requirements for class certification are easily met with respect to the proposed class, and this Court should certify the action as a class action.

## PERTINENT FACTS

### A. Defendant's Procedures for Preparing DMV-349s.

North Carolina law requires that a law enforcement officer create a crash report using a standard DMV-349 form for each reportable motor vehicle accident. N.C. Gen. Stat.§§ 20-8(3), 20-4.01(33b). Defendant's instrumentality, the Charlotte-Mecklenburg Police Department (CMPD), during relevant times uses software called ReportBeam, which is published by CentralSquare Technologies, LLC ("CentralSquare"), to create its DMV-349s. ECF 19 ¶ 34.

████████████████████████████████

████████████████████████████████

---

[4] 18 U.S.C. § 2721(c).

3

███████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████

████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████

The standard DMV-349 form contains a check box for each driver in which the law enforcement officer indicates whether the driver's address on the DMV-349 matches the address on the driver's license ("the Same Address Box"). Each CMPD officer has, at all relevant times, been trained not to check "Yes" for the Same Address Box on the DMV unless he has compared the address on the DMV-349 to either the driver's physical license or to the NCDMV database. Accordingly, if the Same Address Box is checked "Yes," the CMPD officer has compared the address on the DMV-349 either to the address shown on the driver's license or to the address in the DMV database. Thus, where the Same Address Box is checked "Yes," the DMV-349 necessarily includes information from a driver's motor vehicle record, namely the driver's address on the driver's license and in the DMV database. JA6 ¶¶

4

37-40. ECF 1 ¶¶ 40-42; ECF 19 ¶¶ 40-42.

### B. Defendant Disseminates Putative Class Members' Unredacted DMV-349s to Marketers Despite Admonitions of DPPA Noncompliance.

Beginning in 2007 or earlier and continuing through late 2020, CMPD made paper copies of its completed and unredacted DMV-349 forms available to the public in its records division. ECF 1 ¶¶ 48, 49, 53; ECF 19 ¶¶ 48, 49, 53. Defendant made no effort to determine whether a person receiving the personal information on the DMV-349s had a DPPA-permitted purpose for obtaining such information. ECF 1 ¶ 56; ECF 19 ¶ 56.

In 2016, undersigned counsel David Stradley sent a letter to Defendant requesting that Defendant stop making DMV-349 reports available without requiring a DPPA-permitted purpose. ECF 1-1; *see* ECF 1 ¶ 62; ECF 19 ¶ 62. In spite of this letter and the notice it gave Defendant that its practice violated the DPPA, Defendant continued to make copies of DMV-349 reports freely available at its records division without requiring a DPPA-permitted purpose. ECF 1 ¶ 52; ECF 19 ¶ 52.

### C. Defendant's DMV-349s Harvested in Bulk for Marketing Purposes.

A company known as Digital Solutions of the Carolinas procured during relevant times DMV-349s in bulk from CMPD's records division. Specifically, through the seven-month period from November 30, 2017

through June 30, 2018 (the "Class Period," *see* ECF 1 ¶ 111), Digital Solutions regularly sent runners to retrieve CMPD accident reports. Throughout the Class Period, these runners supplied Digital Solutions with all of its CMPD DMV-349s. ECF 32-9 ¶ 5.

Digital Solutions then sold copies of the CMPD accident reports to law firms and others, including James S. Farrin, P.C., d/b/a the Law Offices of James Scott Farrin ("Farrin"), for marketing purposes. *Id.* ¶ 7; ECF 32-10 ¶ 5. Farrin harvested personal information from the DMV-349s he received from Digital Solutions, placed that information into internal spreadsheets, and used those spreadsheets to address direct-mail advertising to accident victims. Farrin has produced its spreadsheets, consisting of the personal information of accident victims harvested from CMPD accident reports during the Class Period, to Plaintiff pursuant to subpoenas in this litigation. ECF 32-10; ECF 32-13.

### D. Defendant Publishes Plaintiff's Personal Information.

Plaintiff Durham was involved in a motor vehicle accident in Charlotte on December 4, 2017. ECF 32-8 ¶ 3. At the scene of the crash, Plaintiff provided the investigating CMPD officer with her driver's license. *Id.* ███

███████████████████████████

█████████████████████████████

████████████████████████

████████████████████████████

████████████████████

The DMV-349 ("Plaintiff's Report") prepared by the CMPD officer displayed Plaintiff's personal information as defined by the DPPA, *see* 18 U.S.C. § 2725(3), including her name, address, and driver's license number. ECF 19 ¶ 67. The CMPD officer checked "Yes" in the "Same Address as Driver's License" box confirming that the address shown on the DMV-349 was the same address on Plaintiff's North Carolina driver's license. Defendant then placed an unredacted copy of Plaintiff's Report on the counter in its records division, making it publicly available. ECF 19 ¶¶ 76-77.

As a result of Defendant's unlawful publications of the unredacted Plaintiff's Report, Plaintiff received numerous solicitation letters from lawyersseeking to represent her in pursuing a claim arising from the accident. *Id.* ¶ 6. Plaintiff's name appears in Farrin's spreadsheets of individuals to whom it intended to send marketing materials. Stradley Decl. at ¶ 4; Sanchez Decl. from *Hensley* at ¶¶ 4-10. Plaintiff was annoyed, concerned, and inconvenienced by the invasion and violation of her DPPA-protected privacy rights. ECF 32-8 ¶ 8.[5]

---

[5] Plaintiff's experience is in all pertinent respects representative of the several thousand putative class members for whom she seeks relief in this action. *See* ECF 1 ¶¶ 45, 46, 47; ECF 19 ¶¶ 45, 46, 47.

## E. Defendant Publishes Plaintiff's Personal Information.

Plaintiff's retained expert in this action, Sankar Selvaraj, participated in the July 16, 2021 Rule 34 inspection of CMPD in *Hensley* and examined the process by which accident reports are created in ReportBeam. ███████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████

## F. CMPD Officers' Use of Imported NCDMV Personal Information in the Crash Reports is Evident in the Metadata.

CMPD's Rule 30(b)(6) designee testified on August 5, 2019, in *Garey v. Farrin*, 1:16-cv-542 (W.D.N.C.), that "there's no way to tell if the auto-fill function was used" in preparing an accident report. ECF 32-1 80-81. However, Plaintiff's counsel persisted. After they took Rule 30(b)(6) depositions of NCDMV, Central Square, and CMPD in *Hensley*; undertook a

Rule 34 inspection of CMPD's electronic database of DMV-349s; obtained CMPD's electronic DMV-349s pursuant to document requests; and engaged an IT expert, they established the following:



## PROCEDURAL HISTORY

After her motion to intervene in *Hensley v. City of Charlotte, supra*, was denied, *see* 2021 U.S. Dist. LEXIS 202756, at *9 (W.D.N.C. Oct. 21,

2021), Plaintiff filed this action on November 30, 2021. ECF 1. Plaintiff's Complaint seeks injunctive and declaratory relief and statutory damages under the DPPA, on behalf of herself and a proposed class of similarly situated persons whose personal information was harvested from Defendant and used for marketing purposes during the Class Period. *Id.* ¶ 111.

On March 8, 2022, Defendant filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1) and (b)(6) for lack of standing and failure to state a claim. ECF 7. On June 15, 2022, Magistrate Judge Cayer issued a Memorandum and Recommendation recommending that the Defendant's motion to dismiss Plaintiff's DPPA claim for monetary relief be denied but that the claim for injunctive and declaratory relief be granted. ECF 14. By Order entered October 13, 2022, Judge Conrad adopted Judge Cayer's recommendation. ECF 17.

Discovery ensued. ███████████████████

████████████████████████████████████

████████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████████████████

██████████████████████████████████

███████████████████████████████

████████████████████████████████████

█████████████████████████████████ Consequently,

Plaintiff issued a subpoena in the Middle District of North Carolina to

Central Square for the electronic records including the pertinent metadata.

23-MC-42 (MDNC). CentralSquare, despite producing the selfsame data for a

different period of time in *Hensley*, objected to the subpoena and filed a

motion for protective order in the Middle District. The Middle District, on

November 20, 2023, transferred the matter to this Court pursuant to Fed. R.

Civ. P. 45(f).

Plaintiff has diligently participated in all required discovery activities,

including preparing for and attending her deposition. ECF 32-11. She stands

ready, willing, and able to continue to prosecute this action on behalf of the

proposed class. ECF 32-8.

**B.** **Proposed Class.**

Plaintiff seeks certification of a class of persons (1) who were listed as

North Carolina-licensed drivers on DMV-349s completed by CMPD officers

within the Class Period; (2) whose name appears on a Farrin Spreadsheet;

and (3) whose North Carolina driver's license number is shown on the DMV-

349 <u>or</u> the Same Address Box for the person is checked "Yes" on the DMV-

349. ECF 1 ¶ 108. Plaintiff also brings the action on behalf of a subclass

consisting of all members of the Class whose personal information was auto-

11

populated onto a DMV-349. *Id.* ¶ 109. Plaintiff in this case is a member of both the general class and subclass defined above.

QUESTION PRESENTED

Should the Court certify the action as a class action?

ARGUMENT

## THE COURT SHOULD CERTIFY THE ACTION AS A CLASS ACTION.

When a lawsuit meets requirements of Rule 23, "certification as a class action serves important public purposes. In addition to promoting judicial economy and efficiency, class actions also afford aggrieved persons a remedy if it is not economically feasible to obtain relief through the traditional framework of multiple individual damage actions." *Gunnells v. Healthplan Svcs.*, 348 F.3d 417, 424 (4th Cir. 2003) (citation, quotation omitted)). This case clearly satisfies the requirements of Rule 23.

The general criteria for certification of a class are set forth in Rule 23(a):

> One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

12

Fed. R. Civ. P. 23(a).  Each of these requirements is met for the proposed class, as demonstrated in the sections that follow.

In addition to the requirements of Rule 23(a), a plaintiff seeking class certification must establish one of the three prerequisites set forth in Rule 23(b), *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997); *Kirkman v. N.C.R.R. Co.*, 220 F.R.D. 49, 52 (M.D.N.C. 2004).  Here, as shown below, subsection 23(b)(3), requiring that common questions of law or fact predominate, is plainly satisfied as to the putative class.

In analyzing whether a class should be certified, Rule 23 should be given "a liberal rather than a restrictive construction." *Gunnells*, *supra*, 348 F.3d at 424. In determining whether to certify an action as a class action, the question for the court "is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met" *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).

A.    <u>Rule 23(a) Requirements are Easily Met Here.</u>

1. **Numerosity.** Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable.  Precise enumeration of the members of a class is not necessary for the named plaintiff to proceed as a representative of the class.  *See, e.g., Simpson v. Specialty Retail Concepts*,

149 F.R.D. 94, 98 (M.D.N.C. 1993).

Based on information provided in discovery to date, the proposed class and subclass each consist of at least several thousand persons. *See* ECF 1 ¶¶ 45-47; ECF 19 ¶¶ 45-47. A proposed class of this size easily satisfies the numerosity mandate of Rule 23(a)(1). *See Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177, 183 (4ᵗʰ Cir. 1993) (affirming district court finding that "480 potential class members would easily satisfy the numerosity requirement"); *Rodger v. Electronic. Data Sys. Corp.*, 160 F.R.D. 532, 535 (E.D.N.C. 1995) ("[C]ircuit precedent has recognized class certification in classes with as few as 18 members . . . and that a class of as few as twenty-five to thirty members raises a presumption that joinder would be impracticable" (citation omitted)). Proposed classes of the size involved here allow the Court to presume the impracticability of joinder. *Olvera-Morales v. Int'l Labor Mgmt. Corp.*, 246 F.R.D. 250, 256 (M.D.N.C. 2007).

2. **Commonality.** The commonality requirement is satisfied where there are common questions of law or fact. "The commonality prerequisite requires a plaintiff to show that the class members share both a common contention and a common injury." *Williams v. Charlotte-Mecklenburg Hosp. Auth.*, No. 2021 U.S. Dist. LEXIS 234368, at *10 (W.D.N.C. Dec. 7, 2021) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-350 (2011). *See also Stafford v. Bojangles Rests., Inc.*, 2023 U.S. Dist. LEXIS 189357, at *9

(W.D.N.C. Oct. 20, 2023) (for purposes of the commonality issue, "putative class members must have suffered the same injury such that their claims depend on a common contention capable of classwide resolution" (quoting *Scott v. Family Dollar Stores, Inc.,* 733 F.3d 105 (4th Cir. 2013); cleaned up)).

There can be no serious dispute here with respect to the *existence* of common questions—indeed, Section B(1), *infra*, demonstrates that those common questions *predominate* over any individual questions. *See* Herbert Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS § 4.22 at 4078 ("[I]f the predominance standard is met, the Rule 23(a)(2) prerequisite is necessarily satisfied"); *Bussian v. DaimlerChrysler Corp.*, 2007 U.S. Dist. LEXIS 44184 at *5 (M.D.N.C. June 18, 2007) (test for commonality "is not demanding, and is met when there is at least one issue whose resolution will affect all or a significant number of the putative class members").

In this case, it is obvious that there are issues common to all members of the proposed class, *see* Complaint ¶ 113, including the fundamental question of whether Defendant violated the DPPA by disclosing class members' unredacted personal information from motor vehicle records without a permissible purpose. These common questions easily satisfy the commonality element of Rule 23(a)(2). *Accord Wilcox v. Swapp*, 330 F.R.D. 584, 590–91 (E.D. Wash. 2019) (in DPPA case against law firm using accident report information for mail solicitations, court determined that questions of

15

whether (1) information on the collision reports was derived from motor vehicle records; and (2) the information was used for a permissible purpose under the DPPA, satisfied commonality element of Rule 23(a)).

In sum, there are, undisputedly, questions common to all members of the putative class. The commonality requirement of Rule 23(a)(2) is, therefore, easily met in this case.

**3. Typicality.** The interests of Plaintiff Durham does not in any manner conflict with, nor are they antagonistic to, those of the members of the putative class. Plaintiff's claims are, therefore, typical of the claims of the class members, as required by Rule 23(a)(3). *DeLoach v. Philip Morris Cos.*, *supra*, 206 F.R.D. 551, 555 (M.D.N.C. 2002) ("The second Rule 23(a)(3) requirement is that the representative claims be typical of the other members of the class. This has consistently been held to mean that his claim cannot be antagonistic to the claims of other members" (citation, quotation omitted)); *Tatum v. R.J. Reynolds Tobacco Holdings, Inc.*, 254 F.R.D 59, 65 (M.D.N.C. 2008) ("The typicality requirement is met where the claims asserted by the named plaintiffs arise from the same course of conduct and are based on the same legal theories as the claims of the unnamed class members" (citation, quotation omitted)).

There is certainly no conflict or antagonism here between the interests of Plaintiff and those of the unnamed class members. Plaintiff and the

16

members of the putative class seek to establish Defendant's liability and to recover statutory damages on common legal and factual theories. Plaintiff, like all other members of the putative class, has been subjected to the unlawful disclosure of protected DPPA information by Defendant. The Plaintiff's Report, like the DMV-349s of other members of the class, shows her driver's license number and has the Address Boxes checked. *See Wilcox v. Swapp*, *supra*, 330 F.R.D. at 592 ("[M]inor variation in how each driver's [crash report] was made . . . does not defeat typicality"; restriction in class definition to persons whose accident reports were created by reference to motor vehicle records [as here] ensured typicality requirement was satisfied).

███████████████████████████████████

████████████████████████

Such a common interest is all that Rule 23(a)(3) requires for Plaintiff's claims to be considered typical. *Accord Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001) ("Cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims" (citation, quotation omitted)). The typicality prong of Rule 23(a) is, accordingly, met because the interests of the named plaintiffs and the putative class "are sufficiently aligned to insure confidence in [the plaintiffs'] ability to adequately represent its interests." *Olvera-Morales v.*

17

*Int'l Labor Mgmt. Corp., supra*, 246 F.R.D. at 258.

**4. Adequacy of Representation.** The final requirement of Rule 23(a) is that the "representative parties . . . fairly and adequately protect the interests of the class." The adequacy prerequisite is used to "uncover conflicts of interest between named parties and the class they seek to represent." *Sharp Farms v. Speaks*, 917 F.3d 276, 295 (4th Cir. 2019). It requires class representatives to be part of the class and "possess the same interest and suffer the same injury as the class members." *Williams v. Charlotte-Mecklenburg Hosp. Auth.,* 2021 U.S. Dist. LEXIS 234368, at *10-11 (W.D.N.C. Dec. 7, 2021). The burden is on the defendants to demonstrate that the representative will be inadequate. *See, e.g., Haywood v. Barnes*, *supra*, 109 F.R.D. at 579.

Courts have generally held that the adequacy-of-representation requirement of Rule 23 is a two-pronged test. First, there can be no antagonism or disabling conflict between the interests of a named class representative and the members of the class. Second, counsel for the proposed class representatives must have the competence to undertake the particular litigation at hand. *DeLoach v. Philip Morris Cos., Inc.*, *supra*, 206 F.R.D. at 556.

Both prongs of the "adequacy" test are met here. First, as demonstrated above, Plaintiff's interests in no way conflict with the interests

18

of the members of the proposed class.  Indeed, her claims are completely typical of the claims of the members of the putative class. *Accord Haney v. Recall Center*, 282 F.R.D. 436, 441 (W.D. Ark. 2012) ("[T]he class representatives are alleging the same violation of the DPPA for themselves as they are for the class members generally. Thus, the representatives interests are common to the class").

Second, there can be no *bona fide* question as to the adequacy of the class representatives' counsel.  They have championed the rights of consumers in actions including class actions, often resulting in significant developments in the jurisprudence, and have many decades of experience handling complex cases. (*See* **Appendix 1**).

## B. <u>Certification is Appropriate Under Rule 23(b)(3).</u>

As previously noted, however, Rule 23(b)(3) requires that "the [common] issues of law or fact . . . predominate over any questions affecting only individual members." The Supreme Court has instructed that "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to want adjudication by representation." *Amchem Prods., Inc. v. Windsor*, *supra*, 521 U.S. at 623.  In the instant case, it is plain that questions of law and fact common to the proposed class predominate over any questions solely affecting individual members of the proposed class. Among the questions of law and fact common to the class are:

(1)     Whether a DMV-349 in which the Same Address Box is checked "Yes" is a motor vehicle record;

(2)     Whether a DMV-349 which openly displays a driver's license number is a motor vehicle record;

(3)     Whether Defendant, by providing unredacted accident reports at its Records Division, knowingly disclosed protected personal information from a motor vehicle record;

(4)     Whether Defendant, by disclosing an unredacted version of each Class member's DMV-349, knowingly disclosed information from a motor vehicle record for a purpose not permitted under the DPPA;

(5)     Whether Defendant, because of its failure to comply with 18 U.S.C. § 2721(c) is estopped to deny, or is otherwise precluded from contesting, Plaintiff's contention that each Class member's information was obtained without a permissible purpose; and,

(6)     Whether Defendant is estopped to deny, or is otherwise precluded from contesting, an individual Class member's claim that at least one item of his personal information on his DMV-349 came from his motor vehicle record.

Essentially, Defendant's liability in this case hinges on the resolution of the above issues.  The existence of such "central or overriding question[s]," 1 H. Newberg & A. Conte, *supra*, § 4.25 at 4.85, plainly meets the test of Rule 23(b)(3).  If the resolution of these common issues is in the proposed class

member's favor, they will prevail; all that would remain would be the calculation of each member's damages. Inasmuch as the claims against the Defendant arise out of the same set of operative facts and are based on common legal theories, the predominance of common questions of fact and law satisfying Rule 23(b)(3) is clear.

"In addition to providing classwide impact, Plaintiff must show that damages are susceptible of common proof." *DeLoach, supra*, 206 F.R.D. at 564.  Here, Plaintiff and each member of the class is entitled to a liquidated damages award of $2,500 under the DPPA.  Since class-wide liability issues and damage calculations are susceptible of generalized proof, there is no barrier to class certification. *Accord Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 655 (4th Cir. 2019) (affirming Rule 23(b)(3) class certification in TCPA case where, *inter alia*, statutory damages could be imposed without actual proof of loss and liability determinations involved no questions of individual reliance).

In addition to finding that common questions predominate, Rule 23(b)(3) also requires that the Court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  In considering this issue, the Rule instructs the Court to consider:

(A)  The interests of members of the class in individually

controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3). *See DeLoach*, *supra*, 206 F.R.D. at 557.

In the case *sub judice*—given the fact that individual lawsuits against Defendant would require such a prodigious expenditure of resources that it could not be justified economically for a single class member—the action will proceed as to the unnamed class members *only* if the Court certifies a class.

Plaintiff is aware of no pending litigation raising similar issues against Defendant.

This judicial district is the ideal location for the class members' claims to be concentrated, as the Court is situated centrally among the class of North Carolina residents, and the parties will be assured of careful and insightful consideration of their respective positions in this Court.

Likewise, Plaintiff can foresee no management difficulties which would preclude this action from being maintained as a class action. *Accord DeLoach*, *supra*, 206 F.R.D. at 567 ("[W]hile the number of class members is in the hundreds of thousands, the difficulties attendant with calculation of damages do not make this case unmanageable'" (quoting *Windham v. American Brands, Inc.*, 565 F.2d 59, 68 (4th Cir. 1977). In any event,

potential management problems are not, standing alone, grounds for denying class certification. *DeLoach, supra*, 206 F.R.D. at 567.

Further, the class and the subclass are ascertainable. The identities of persons whose personal information was disclosed by Defendant during the Class Period can be easily determined from the Farrin spreadsheets. Moreover, all accident reports from CMPD are available and can be analyzed to determine which have the Address Box checked. ██████████████

███████████████████████████████████████████████

████████████████████████████████

## CONCLUSION

Rule 23's requirements for class certification are easily satisfied with respect to the proposed class. Accordingly, the Court should certify the action as a class action.

Respectfully submitted, this the 1st day of December, 2023.

/s/ John F. Bloss
N.C. State Bar No. 23947
jbloss@greensborolaw.com
Frederick L. Berry
N.C. State Bar No. 9696
fberry@greensborolaw.com
HIGGINS BENJAMIN, PLLC
301 North Elm Street, Suite 800
Greensboro, North Carolina 27401
Telephone:(336) 273-1600

/s/ J. David Stradley
N.C. State Bar No. 22340
stradley@whiteandstradley.com
Robert P. Holmes, IV
N.C. State Bar No. 12438
rob@whiteandstradley.com
WHITE & STRADLEY, PLLC
3105 Charles B. Root Wynd
Raleigh, North Carolina 27612
Telephone: (919) 844-0400

/s/ Andrew H. Brown
N.C. Bar No. 28450
drew@greensborolawcenter.com
James R. Faucher
N.C. Bar No. 31514
james@greensborolawcenter.com
BROWN, FAUCHER, PERALDO & BENSON, PLLC
822 N. Elm Street, Suite 200
Greensboro, North Carolina  27401
Telephone:(336) 478-6000

*Attorneys for Plaintiff*